UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARE BODY LASER SPA, INC.,

Plaintiff,

-v-

JOHN M. BILLINGS, *and* LUNABIT CAPITAL LLC,

Defendants.

---

23 Civ. 9951 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case arises out of the acrimonious breakdown of the relationship—both professional and personal—between Claudia Theodoro, the sole owner of plaintiff Bare Body Laser Spa, Inc. ("Bare Body"), and defendant John Billings, her former romantic and business partner. Bare Body alleges Billings and his company, defendant Lunabit Capital LLC ("Lunabit"), fraudulently obtained a $500,000 loan in Bare Body's name, the fruits of which Billings and Lunabit (together, "defendants") used to gamble on Bitcoin. Bare Body sues Billings and Lunabit for fraud, conversion, unjust enrichment, and breach of fiduciary duty.

Defendants now move to dismiss Bare Body's First Amended Complaint ("FAC") pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, to transfer this case to federal court in the District of Minnesota, under 28 U.S.C. §§ 1404(a) and 1406(a). Defendants also move to strike several allegations in the FAC under Rule 12(f). For the reasons that follow, the Court grants defendants' motion to transfer and denies as moot defendants' motion to dismiss for lack of personal jurisdiction. Defendants' other motions must await resolution by the transferee court.

## I.   Background[1]

### A.   Factual Background

#### 1.   The Parties

Bare Body is a New York corporation with its principal place of business in New York. FAC ¶¶ 1, 7. It owns and operates two medical spas (one each in New York and Minnesota) which provide cosmetic treatments and spa services. *Id.* ¶¶ 7–8. Theodoro is Bare Body's sole shareholder. *Id.* ¶ 9. Theodoro's current residence is unclear.

Billings, a medical doctor, is a citizen and resident of Minnesota. *Id.* ¶ 2. Lunabit is a limited liability company organized under Delaware law with a principal place of business in Minnesota. *Id.* ¶ 3. Lunabit's sole member is Lunabit Partners LLC. Daniel Decl. ¶ 1. Lunabit Partners LLC has two members: Billings and Zachary Daniel, a citizen and resident of Washington. *Id.*; Billings Decl. ¶ 31.

#### 2.   The Loan

In October 2021, Theodoro, then living in New York, met Billings. FAC ¶ 12. Soon after, they began a long-distance romantic relationship. *Id.* ¶¶ 12, 17–18. In January and February 2022, Theodoro began the process of moving in with Billings, transferring some of her belongings to his home in Minneapolis, Minnesota. *Id.* ¶¶ 17–18.

---

[1] The facts on which this decision is based are drawn from the parties' pleadings and submissions in support of and in opposition to the instant motions—specifically, Bare Body's First Amended Complaint, Dkt. 34 ("FAC"); the declarations in support, plus attached exhibits, of Jon R. Steckler, Dkt. 43 ("Steckler Decl."), John Billings, Dkt. 44 ("Billings Decl."), and Zachary Daniel, Dkt. 45 ("Daniel Decl."); the declaration in opposition, plus attached exhibits, of Claudia Theodoro, Dkt. 50, Ex. 1 ("Theodoro Decl."); and the declarations in further support, plus attached exhibits, of John Billings, Dkt. 54 ("Billings Reply Decl."), Zachary Daniel, Dkt. 55 ("Daniel Reply Decl."), and Brian Cunningham, Dkt. 56 ("Cunningham Decl."). Such extrinsic materials are permissibly considered on motions to transfer venue. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 23 n.1 (S.D.N.Y. 2016).

At the time Theodoro moved to Minnesota, Bare Body had one location—in New York City. *Id.* ¶ 18. As part of her move to Minnesota, Theodoro planned to open a second location in Minneapolis. *Id.* To do so, however, she needed to purchase new med-spa equipment, which cost tens of thousands of dollars. *Id.* ¶ 19. The interest rate for financing such purchases varied based on whether a medical doctor was associated with the new location. *See id.* ¶¶ 20–21. If a medical doctor were involved, the interest rate would be cut in half. *Id.*

On February 14, 2022, Billings offered to help Bare Body—and thus Theodoro—with obtaining the lower interest rate. *Id.* ¶ 21. If Theodoro made him a 50% shareholder in Bare Body, Billings told her, he would assist her to secure the lower loan rates, and then immediately forfeit his shares after the financing was secured. *Id.* Theodoro agreed. *Id.* ¶ 22.

On or about March 1, 2022, Billings submitted a loan application to Bankers Healthcare Group LLC ("BHG") for $500,000 on behalf of Bare Body, *id.* ¶ 23, purportedly to finance "Equipment Purchase," *id.* ¶¶ 23–24. Bare Body alleges that Billings submitted this loan "as the purported 'President of' Bare Body, "which he never was." *Id.* The loan funded in late March. Billings Decl. ¶ 10.

### 3.    The Bitcoin

On or about March 23, 2022, Billings told Theodoro that he planned to use the $500,000 to invest in Bitcoin, rather than to purchase equipment for Bare Body's new location. FAC ¶ 25. He told her that the Bitcoins would be stored in Bare Body's name and used solely to "help [her] save for [her] future." *Id.* ¶ 26. Trusting her romantic partner, Theodoro acquiesced. In April 2022, she sent $260,000 to Lunabit—Billings' company, co-owned by his friend, Zachary

Daniel—from Bare Body's bank account. *Id.* ¶ 28. In June 2022, she wired an additional $225,000 of the loan proceeds to Lunabit. *Id.* ¶ 31.

In July 2022, various items of med-spa equipment were delivered to Billings' home in Minnesota—where Theodoro had been staying—to be stored in his garage until Theodoro found a lease for her new business. *Id.* ¶ 32. In September 2022, Theodoro moved the remainder of her personal belongings into Billings' home, sublet her New York apartment, and entered into a six-month lease for office space in Minneapolis. *Id.* ¶¶ 33–34.

By November 2022, Bare Body was unable to continue making the monthly loan payments. *Id.* ¶ 36. Theodoro pleaded with Billings to refinance the loan outside of Bare Body's name, to allow Bare Body to obtain other financing. *Id.* Billings refused, but agreed to begin making the monthly payments on the loan, and to reimburse Bare Body for payments already made. *Id.*

### 4. The Breakup

Between November 2022 and January 2023, strains arose in Billings and Theodoro's relationship. *Id.* ¶ 37. In January 2023, they broke up. *Id.* ¶ 38. Their relationship deteriorated from there. In February and March 2023, Theodoro pleaded with Billings to take the loan out of Bare Body's name (which Billings again refused to do) and attempted to remove Bare Body's equipment from his home (which Billings refused to allow). *Id.* ¶¶ 40–41. Billings also refused to relinquish his shares in Bare Body. *Id.* ¶ 43.

### 5. This Lawsuit

In this lawsuit, Bare Body asserts four claims. First, the FAC alleges that Billings falsely represented to Theodoro that he would forfeit his shares in Bare Body once financing was secured, and that such conduct constitutes fraud in the inducement. *Id.* ¶¶ 47–51. Second, it alleges that Billings exercised wrongful control over Bare Body's equipment, and that Billings

4

and Lunabit exercised wrongful control over Bare Body's loan proceeds, which constitutes conversion. *Id.* ¶¶ 53–57. Third, it alleges that Billings and Lunabit have been unjustly enriched by the loan proceeds. *Id.* ¶¶ 60–62. Fourth, it alleges that Billings has breached fiduciary duties of loyalty and due care to Bare Body by refusing to account to Bare Body for his use of the loan proceeds. *Id.* ¶¶ 64–67.

### B.    Procedural History

On October 3, 2023, Bare Body initiated this case in the Supreme Court of the State of New York, County of New York. Dkt. 1, Ex. 1. On November 11, 2023, defendants removed the case to this Court on the basis of diversity jurisdiction. Dkt. 1.

On December 15, 2023, defendants moved to dismiss Bare Body's complaint, Dkt. 24, and filed a memorandum of law in support, Dkt. 25. The Court directed Bare Body to either amend its complaint or oppose the motion to dismiss by January 5, 2024, Dkt. 30, a deadline later extended to January 19, 2024, Dkt. 32. On January 18, 2024, Bare Body filed the FAC. Dkt. 34.

On February 9, 2024, defendants moved to dismiss the FAC, or transfer the case under 28 U.S.C. §§ 1404(a) and 1406(a), Dkt. 41, and filed a memorandum of law in support, Dkt. 42 ("Def. Br."). On March 8, 2024, Bare Body filed its opposition. Dkt. 50 ("Pl. Br."). On March 29, 2024, defendants filed their reply. Dkt. 53 ("Def. Reply Br.").

## II.    Discussion

Defendants move to dismiss the FAC pursuant to Rule 12(b)(2), for lack of personal jurisdiction, Rule 12(b)(3), for improper venue, and Rule 12(b)(6), for failure to state a claim. In the alternative, defendants move to transfer this case to the U.S. District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

A.    **Order of Analysis**

A threshold question is whether to address first (1) defendants' motion challenging

personal jurisdiction, or (2) their motions challenging the propriety of venue, and to transfer

venue.  It is common to resolve challenges to personal jurisdiction before addressing motions

directed at venue, but a court is not required to do so.  *Cavit Cantina Viticoltori Consorzio*

*Cantine Sociali Del Trentino Societa Cooperativa v. Browman Family Vineyards, Inc.*, 656 F.

Supp. 2d 421, 424 (S.D.N.Y. 2009); *see also Everlast World's Boxing Headquarters Corp. v.*

*Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013).  Courts may address venue motions at

the threshold "when there is a sound prudential justification for doing so," because "neither

personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter

jurisdiction is." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).

Addressing venue first is particularly sensible where the question of whether there is

personal jurisdiction over a defendant in the district of filing is close and likely to yield further

litigation.  *Cavit Cantina*, 656 F. Supp. 2d at 424 (addressing venue motion first given

"substantial and genuine debate" whether personal jurisdiction over defendant would be proper);

*see also Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp.

731, 735 (S.D.N.Y. 1996) (also deciding venue first).  Resolving venue does not require a

preliminary finding that "the transferring court has personal jurisdiction over the defendants."

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962).  Resolving a venue motion first has

particular prudential merit where personal jurisdiction would likely exist in the proposed

transferee district, because "a decision to transfer would render personal jurisdiction analysis

with respect to [the Southern District] irrelevant." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d

381, 385–86 (S.D.N.Y. 2010); *see also Corke v. Sameiet M.S. Song of Nor.*, 572 F.2d 77, 79–80 (2d Cir. 1978).

Here, defendants contest personal jurisdiction in this District, but it is clear that personal jurisdiction would exist over them in the District of Minnesota, the proposed transferee district. And defendants' challenge to personal jurisdiction in this District is substantial. Both Billings and Lunabit are based in Minnesota, not New York; this Court thus lacks general jurisdiction over either defendant. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014). Accordingly, personal jurisdiction must rest on specific jurisdiction, meaning that Bare Body's claims must "arise out of or relate to" defendants' "contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation omitted). But the pleadings suggest that almost all conduct at issue occurred in—and was directed to—Minnesota. As alleged, Billings' negotiations with Theodoro as to the loan occurred in February 2022, after Theodoro had "beg[u]n the process . . . of moving" into Billings' home in Minneapolis. FAC ¶ 18. That loan, in turn, was made by a bank in Florida, Billings Decl., Ex. 1 at 2, for equipment to be purchased (and used) in Minnesota, FAC ¶ 25. The only potential factual basis for jurisdiction in New York, based on the FAC, is that Billings acquired shares in Bare Body, a New York corporation, and then sought to acquire a loan on its behalf. *See id.* ¶¶ 21–23. But ownership of stock in a corporation that is incorporated in a state does not by itself confer personal jurisdiction in that state. *Shaffer v. Heitner*, 433 U.S. 186, 211–12 (1977). Whether Billings' other conduct—including his role in applying for a loan for the corporation—is sufficient to support personal jurisdiction presents a close question. *Compare, e.g., Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No. 05 Civ. 10773 (RMB), 2007 WL 1489806, at *5 (S.D.N.Y. May 21, 2007) (personal jurisdiction over New York corporation's majority shareholder with respect

7

to corporation's transaction with a New York bank), *with, e.g., In re Alstom SA*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005) (no personal jurisdiction over New York corporation's board member, despite some limited corporate activity in New York). By contrast, the District of Minnesota undisputedly has personal jurisdiction over both defendants. Billings lives there, FAC ¶ 2, and Lunabit's principal place of business is there, Billings Decl. ¶ 1. *See Daimler*, 571 U.S. at 137. It is, therefore, prudent to address the motions addressed to venue first.

**B.    Transfer for Improper Venue Under 28 U.S.C. § 1406(a)**

**1.    Legal Standards**

Under 28 U.S.C. § 1391(b)(2), venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Section 1391(b)(2) "contemplates that venue can be appropriate in more than one district" and "permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005). "Nevertheless, the 'substantial events or omissions' requirement does limit the forums available to plaintiffs." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *see also Gulf Ins. Co.*, 417 F.3d at 357 (cautioning district courts to "take seriously the adjective 'substantial'" in discharging duty to "construe the venue statute strictly"). The plaintiff bears the burden of pleading venue. *Amaker v. Haponik*, 198 F.R.D. 386, 391 (S.D.N.Y. 2000).

To ascertain whether venue is proper under § 1391(b)(2), the Second Circuit has instructed district courts to first "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims" and then "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Daniel*, 428 F.3d at 432.

### 2.    Application

As defendants correctly argue, all four claims in the FAC are based on conduct that, as alleged, occurred primarily, if not entirely, in Minnesota.

The first cause of action, fraud in the inducement, is brought solely against Billings. It arises from Billings' acquisition of shares in Bare Body, which the FAC alleges occurred under false pretenses. Specifically, it alleges that Billings "falsely represented to Theodoro that" he would "immediately forfeit" any shares Bare Body assigned to him "after the financing was secured." FAC ¶ 47. Bare Body admits, however, these representations were made "while [Billings] and Ms. Theodoro were in Minnesota," Pl. Br. at 6, after Theodoro "began the process . . . of moving" into Billings' home in Minneapolis, FAC ¶ 17. To the extent Billings' failure to promptly forfeit his shares in Bare Body is relevant to the fraud, that omission (his failure to act) also took place in Minnesota, where he has lived throughout the events at suit. *See id.* ¶ 43. That Bare Body, a New York corporation, experienced harm in this District as a result of the alleged fraud is insufficient to establish venue here. *See Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Lab.*, No. 14 Civ. 9104 (KMK), 2015 WL 8492755, at *4 (S.D.N.Y. Dec. 10, 2015) ("A plaintiff's economic harm felt in the original forum is not sufficient for a finding of proper venue under Section 1391(b)(2)." (citation omitted)).

Bare Body's counterargument consists of the vague assertion that venue is proper based on the "numerous communications" Billings allegedly "directed . . . into New York" related to the alleged fraud. Pl. Br. at 8. That argument is unpersuasive. Even on Theodoro's account, these communications were limited. She alleges that Billings visited her in New York at unspecified times between October 2021 and January 2023 to "assur[e] her that [she] had nothing to worry about because the Bitcoin were purchased in [Bare Body's] name" and to convey the physical shareholder certificates. Theodoro Decl. ¶¶ 7, 14. But Bare Body does not

9

explain how such communications are relevant to a claim of fraud in the inducement, as they necessarily occurred *after* Billings convinced Theodoro to give him an ownership stake in Bare Body. That claim centers on Billings' earlier (pre-fraud) promises, rather than his later (post-fraud) reassurances. *Cf. Palmore v. Napoli Shkolnik PLLC*, No. 23 Civ. 1616 (ER), 2024 WL 1330003, at *10 (S.D.N.Y. Mar. 28, 2024) ("Only the events that directly give rise to a claim are relevant [for venue purposes]." (citation omitted)). And even assuming that these statements are relevant—perhaps to show attempted concealment by Billings of the alleged fraud—Bare Body does not explain why these in-District communications constitute a "*substantial* part of the events or omissions" giving rise to the claim. 28 U.S.C. § 1391(b)(2) (emphasis added); *see also Gulf Ins. Co.*, 417 F.3d at 357 (courts must "take seriously the adjective 'substantial'"). That the parties interacted in this District does not alone make venue here proper. *See, e.g., PI, Inc. v. Ogle*, 932 F. Supp. 80, 85 (S.D.N.Y. 1996) (venue improper where fraud claim "concerns statements [defendant] allegedly made" in different state, despite the fact that the parties had other interactions in that state); *Friedman v. Revenue Management of N.Y., Inc.*, 38 F.3d 668, 672 (2d Cir. 1994) (venue improper where "all the events" alleged in the complaint "occurred in" a different state, despite the fact that the parties had other interactions in that state). Bare Body has failed to meet its burden to show that venue is proper in this District as to its first claim.

The second and third causes of action are for conversion and unjust enrichment, respectively. These are asserted against both defendants and arise from Billings' alleged refusal to return Bare Body's spa equipment, FAC ¶¶ 53–54, and his use of Bare Body's loan funds to purchase Bitcoin and store it with Lunabit, *id.* ¶¶ 60–61. Neither claim has a discernable nexus to this District. As defendants note, all of this conduct took place in Minnesota, where the spa equipment was stored (and allegedly converted) and where the Bitcoin was purchased. *See id.*

10

¶¶ 25–26 (Billings purchased Bitcoin with loan proceeds in Lunabit's bank account), 32 (equipment purchased by Bare Body was "delivered to Billings' home in Minnesota," where "Theodoro was residing at the time"). Bare Body does not respond to this argument. It does not meet its burden to show that venue in this District is proper as to these claims.

The fourth cause of action, for breach of fiduciary duty, is brought solely against Billings. The FAC alleges Billings breached his duty to Bare Body by "purchasing and holding hundreds of thousands of dollars in Bitcoin in his and/or Lunabit's name while refusing to account to [Bare Body] for such purchase." FAC ¶ 66. Whether the alleged breach occurred when Billings purchased the Bitcoin or when he refused to account to Bare Body for its value, the relevant acts or omissions occurred in Minnesota, his place of residence. *See id.* ¶¶ 17–18. That the alleged duty was owed to an entity incorporated in this District does not supply venue. *See Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 555–58 (E.D.N.Y. 2011) (collecting cases). Bare Body thus fails to meet its burden to show that venue is proper as to this claim.

The Court thus finds venue improper in this District. On such a finding, a court may either dismiss the case without prejudice or transfer the case to an appropriate venue "in the interest of justice," 28 U.S.C. § 1406(a). Such a decision "lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Defendants propose that the Court transfer this case to the District of Minnesota. Def. Br. at 1.

Before transferring a case, a court must assure itself that venue would be proper in the transferee district. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A natural person resides "in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1). An LLC resides "in any judicial district in which [it] is subject to the court's

11

personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Because Billings resides in the District of Minnesota, FAC ¶ 2, venue is necessarily proper there as to him. And because Lunabit has its principal place of business in that District, Billings Decl. ¶ 1, it is subject to personal jurisdiction there, *Daimler*, 571 U.S. at 137, and venue is proper there. As such, venue is proper in the District of Minnesota.

The Court finds that transfer to the District of Minnesota, rather than dismissal without prejudice, is warranted in this case. A transfer under § 1406(a) will minimize unnecessary delay and inconvenience in a case that has already changed courts once (via removal from state court) and has motions to dismiss and to strike under Rule 12 pending. *See Goldlawr, Inc. v. Heinman*, 369 U.S. 463, 466–67 (1962) (court may take into account the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits"); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). The Court thus orders this case transferred to the District of Minnesota under § 1406(a).

### C.    Transfer in the Interests of Justice Under 28 U.S.C. § 1404(a)

The Court considers, in the alternative, defendants' motion to transfer the case under 28 U.S.C. § 1404(a). This motion is also meritorious.[2]

---

[2] Courts in this District, including this one, have granted motions to transfer venue under § 1404(a) while reserving the question of whether venue in this District is proper under § 1391. *See, e.g., Brodsky v. Match.com LLC*, No. 09 Civ. 5328 (NRB), 2009 WL 3490277, at *5 (S.D.N.Y. Oct. 28, 2009); *AGCS Mar. Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 645 (S.D.N.Y. 2011); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742–34 (S.D.N.Y. 2013); *Allen v. Metro. Transp. Auth.*, No. 13 Civ. 3106 (JPO) (HBP), 2014 WL 549486, at *9 (S.D.N.Y. Feb. 11, 2014). Under *Van Dusen v. Barrack*, 376 U.S. 612 (1964), where a case is transferred for improper venue under § 1406(b), the new forum's choice of law rules apply, whereas when a case is transferred in the interests of justice under § 1404(a), the choice-of-law rules of the forum where the case was filed govern. *See id.* at 638–39; *see also Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, 855 F. Supp. 627, 629 (S.D.N.Y. 1994) ("[T]he law applicable subsequent to a transfer depends upon the statutory provision pursuant to which the transfer was made."). For avoidance of doubt, because the Court

### 1.   Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This provision allows district courts "wide latitude to decide whether to transfer venue." *Everlast*, 928 F. Supp. 2d at 742; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Courts undertake a two-step inquiry to decide motions to transfer venue under Section 1404(a). *Everlast,* 928 F. Supp. 2d at 743.  The Court first must determine "whether the action could have been brought in the transferee district." *Id.*  If so, the Court then must determine "whether transfer would be an appropriate exercise of the Court's discretion." *Id.*  To assess whether transfer is appropriate, the Court is required to balance various factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Id.*  "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

### 2.   Application

As to step one, for the reasons above, venue is proper as to both defendants in the District of Minnesota.

---

has found venue improper under § 1406(b), the Court's alternative finding that transfer would be warranted under § 1404(a) would not justify application of the choice-of-law rules of this District following transfer.

As to step two, the Court, for the following reasons, finds that the relevant factors, viewed together, favor transfer of this action to the District of Minnesota.

### a.    Factors favoring transfer

#### i.    Convenience of witnesses

The convenience of witnesses "is an important consideration, and has often been described as the single most important § 1404(a) factor." *Everlast,* 928 F. Supp. 2d at 743; *see also Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir. 1989). "When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).

This factor strongly favors transfer. By far the most important witnesses at trial will be Billings and Theodoro. Billings lives in the District of Minnesota. Theodoro curiously does not disclose her state of residence in her declaration, and Bare Body's briefs are similarly silent on the topic. That the only essential witness whose location is known resides in the District of Minnesota supports transfer to that District. *See, e.g., Lapushner v. Admedus Ltd.*, No. 18 Civ. 11530 (ALC), 2020 WL 777332, at *4 (S.D.N.Y. Feb. 14, 2020) (factor supports transfer where "particularly important" witnesses, the individual defendants, reside in transferee district); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 256 (E.D.N.Y. 2010) (factor supports transfer where "the testimony [that would be] more critical and extensive is likely to be provided by" defendants who reside in the transferee district); *New Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Nuvelo, Inc.*, No. 07 Civ. 1229 (HB), 2007 WL 2068107, at *4 (S.D.N.Y.

July 20, 2007) (factor supports transfer where the majority of "material witnesses," in particular the individual defendants, reside in the transferee district).

Bare Body lists nine witnesses in response to defendants' motion, but those witnesses' links to this case appear secondary at best. Of those nine, eight are personal friends of Theodoro.[3] Theodoro Decl. ¶ 17. Three of these witnesses, living in Florida and New Hampshire, cannot claim this District is a convenient forum; the Court thus sets them aside as not bearing on the choice between this District and the District of Minnesota. Of the remaining six witnesses, four live within the Southern District of New York, and the other two live relatively nearby—in northern New Jersey and upstate New York.

Bare Body has not explained with any specificity why these six witnesses are essential or even relevant to its case. *Cf. SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (for a witness's location to merit weight on transfer motion, party must offer a "persuasive explanation of why the testimony of these persons is important"). Instead, in boilerplate fashion, Theodoro's declaration states generally that every witness she lists has "personal knowledge concerning the level of control/influence Billings had on" her and personal knowledge of "the terms of the oral agreements" into which she and Billings entered. Theodoro Decl. ¶ 11. It does not elaborate. To the extent that these witnesses are her friends, it is unclear, without more, the bases (beyond inadmissible hearsay) on which they could attest to Theodoro and Billings' oral agreements. And to the extent these friends might comment generally on Billings' influence over Theodoro, that testimony is of only modest value unless connected to the principals' dealings relevant to this controversy. Because these

---

[3] The ninth witness, Sade Johnson, is a former assistant to Theodoro at Bare Body. Bare Body's proffer that Johnson allegedly met Billings on occasion in Bare Body's New York spa does not explain what relevant evidence Johnson has to offer.

dealings, by Bare Body's admission, occurred in Minnesota, Pl. Br. at 6, it is not clear why these individuals, who are not claimed to have been in Minnesota during the relevant period, could testify as percipient witnesses to the central matters in dispute.[4]

Because the most important witness whose location has been identified (Billings) resides in the transferee district, and because Bare Body has failed to identify any relevant witnesses in this District, this factor strongly supports transfer. *See, e.g., Everlast*, 928 F. Supp. 2d at 744 (in assessing forum convenience, the "greater relative quantity of [transferee]-based witnesses alone favors transfer").

### ii.    Locus of operative facts

The locus of operative facts is another "primary factor in determining a § 1404(a) motion to transfer." *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998). "[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action." *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation omitted). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted). As to this factor, the Court focuses on "the degree of relationship between the forum and the cause of action." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012).

---

[4] Defendants list Minnesota-based witnesses—apart from Billings—whom they anticipate calling to testify. The testimony of these witnesses, like Bare Body's, appears to be of limited relevance. Three are Minnesota law enforcement officers, who would testify as to their interactions with Theodoro and Billings (specifically, as to calls both placed during their relationship). Others are the landlord of the building where Bare Body leased a spa location, who would testify as to Billings' involvement with Bare Body's proposed business there, and the principals' joint therapist, who would testify as to their relationship. Billings Reply Decl. ¶ 6. The Court affords the location of these witnesses little weight.

16

Although Bare Body is a New York corporation, the central events giving rise to the claims here—based on the conduct of the two central actors, Theodoro and Billings—occurred in Minnesota. As explained above, each of Bare Body's four claims turns primarily or entirely on events that occurred while Theodoro and Billings were physically present in Minnesota. FAC ¶¶ 17–29, 31–44. As to the first cause of action (fraud), the alleged misrepresentations—related to the potential loan for Bare Body's Minneapolis spa—occurred on or after February 2022, after Theodoro had moved her belongings into Billings' Minneapolis home. *Id.* ¶¶ 17–18. As to the second and third causes of action (conversion and unjust enrichment), Billings' alleged refusal to return Bare Body's spa equipment, *id.* ¶¶ 53–54, and his use of Bare Body's loan funds to purchase Bitcoin, *id.* ¶¶ 60–61, occurred in Minnesota. And the fourth cause of action (breach of fiduciary duty), centers around Billings' refusal—while in Minnesota—to account to Bare Body for the Bitcoin's value. *Id.* ¶ 66. The "center of gravity" of this case is thus in the District of Minnesota. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007); *cf., e.g., Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 209 (S.D.N.Y. 1998) (locus of operative facts disfavored transfer where "a substantial portion of the wrongful acts . . . occurred in the Southern District" and "conduct and activities in the Southern District are key elements of [plaintiff's] case").

To be sure, some conduct potentially relevant to this case may have taken place in this District. Theodoro vaguely asserts that some misrepresentations occurred in New York at some time between October 2021 and January 2023 and that Billings visited her in New York "numerous" times in that period. Theodoro Decl. ¶¶ 6, 16. But courts have uniformly recognized that this factor does not require that all events must have occurred in the transferee venue—only that the most crucial events occurred there. *See Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843,

17

855 (S.D.N.Y. 2017). The operative allegations here—the promises to Theodoro as to the Minneapolis spa, the purchase of the Bitcoin, and the retention of the spa equipment—all centrally derive from events in Minnesota. This factor favors transfer.

### iii.    Convenience of parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *SBAV*, 2013 WL 3467030, at *8. But a motion to transfer "should not be granted if all transfer would accomplish is to shift the inconvenience[] from one party to the other." *Guardian Life Ins. Co. of Am. v. Hernandez*, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) (citation omitted). In weighing the factors, "[t]he convenience of non-party witnesses is more significant than that of party witnesses." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citing *Nieves v. Am. Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988)).

Bare Body has two known brick-and-mortar locations, one in Minnesota and one in New York, FAC ¶ 7. In practice, this factor appears essentially neutral as to Bare Body.[5] Bare Body is incorporated in New York and designates New York as its principal place of business, *id.* ¶¶ 1, 7, but it does not identify any facts suggesting that it is physically more present in either state or that either venue is more convenient than the other. *See, e.g., Liberty Mutual Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 389 (S.D.N.Y. 2014) (evaluating convenience for corporate

---

[5] Where the party is a closely-held corporation, courts have treated the underlying natural person or persons that control the corporation as the party for the practical purposes of determining party convenience upon motions to transfer venue. *See, e.g., Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d, 236–37 (S.D.N.Y. 2013) (analyzing convenience of closely-held corporate defendant made up of two sole members based on "number of trips to this district that [d]efendants would have to make personally"). Because Theodoro wholly owns party Bare Body, the Court could ordinarily look to Theodoro as the relevant person in determining the convenience to Bare Body. However, because Theodoro's current residence is undisclosed, the Court cannot make an assessment on that basis.

parties based on the number of physical branches in each state); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 248, 258–59 (E.D.N.Y. 2010) (same); *Baltimore v. Toyota Motor Credit Corp.*, No. 00 Civ. 8415 (RCC), 2001 WL 637377, at *2–3 (S.D.N.Y. June 8, 2001) (same).

For the defendants, however, Minnesota is a far more convenient forum. Billings resides in Minnesota, FAC ¶ 2, and Lunabit's activities are limited to Minnesota and Washington State, Billings Decl. ¶ 31. Transfer to the District of Minnesota would thus promote convenience for defendants without inconveniencing Bare Body, which is also present in Minnesota.

iv.    Relative means of the parties

The relative means of the parties favors Minnesota. Billings has declared that he may face substantial financial hardship if forced to defend this lawsuit in Manhattan. Billings Decl. ¶ 36 (defending this lawsuit "has been very burdensome financially"). Bare Body has not made a claim of financial adversity were it to pursue its claims in Minnesota, where it maintains a spa location, FAC ¶ 7.

b.    *Factors disfavoring rransfer*

The only factor that disfavors transfer is Bare Body's choice to sue in this forum. In the Second Circuit, the "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). Although "[a] plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test," *SBAV LP*, 2013 WL 3467030, at *11, for three reasons, "that choice merits less deference" here. *Everlast*, 928 F. Supp. 2d at 748. First, although the plaintiff, Bare Body, is a New York corporation, the residence of the real party in interest, Theodoro, is unknown. Where the real party in interest has limited geographic ties to this District, "there is not a strong presumption in favor of [the plaintiff's] choice of forum."

19

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998). Second, the deference to a plaintiff's choice of forum "is diminished when," as here, the "plaintiff is a corporation doing business [out of state] and can expect to litigate in" other states' courts. *LaSala v. Bank of Cyprus Public Co.*, 510 F. Supp. 2d 246, 257 (S.D.N.Y. 2007). And third, as noted, "the connection between the case and the chosen forum is minimal," such that Bare Body's "choice of forum is not entitled to great weight." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010); *see also D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 323 (S.D.N.Y. 1996) ("[A]lthough a plaintiff's choice of forum is generally given substantial weight, this presumption does not apply in cases such as this one where there is little material connection between the chosen forum and the facts and issues of the case.").

      *c.*     *Neutral factors*

The remaining factors are neutral in this case.

      i.     Location of documents and relative ease of access to sources of proof

The location of relevant documents and the relative ease of access to sources of proof do not materially favor either side. Given electronic discovery, and absent any concrete illustration of inconvenience to either side relating to documents or other non-testimonial evidence, this factor does not materially favor either venue. *See Guardian*, 2011 WL 3678134, at *3.

      ii.     Availability of process to compel unwilling witnesses

"The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002). "Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court." *In*

*re Anadarko Petroleum Corp.*, No. 10 Civ. 05894 (PGG), 2012 WL 12894796, at *8 (S.D.N.Y. Mar. 19, 2012).

Here, the availability of process to compel the attendance of unwilling witnesses does not materially favor or disfavor transfer because neither party has "persuasively identified particular witnesses likely to present attendance challenges." *SBAV LP*, 2013 WL 3467030, at *11. For this factor to matter, the moving party must demonstrate that the non-party witnesses are actually unwilling to testify. *See, e.g.*, *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22 Civ. 2538 (LJL), 2022 WL 17067984, at *9 (S.D.N.Y. Nov. 17, 2022) ("For this factor to have weight . . . [movants] would have to show both that the [potential witnesses] have relevant testimony and that they would be unwilling to testify without a subpoena."); *SBAV LP*, 2013 WL 3467030, at *11 ("[Movant] does not suggest that either would be unwilling to testify voluntarily."); *Soto v. Bey Transp. Co.*, No. 95 CIV. 9329(PKL), 1997 WL 407247, at *4 (S.D.N.Y. July 21, 1997) ("Nothing has been presented to suggest that any of the non-party witnesses would be unwilling to testify. Therefore, this factor does not enter the Court's analysis.").

Defendants correctly note that, were a Minnesota witness unwilling to testify, he or she would fall outside of the 100-mile subpoena power of this Court and be unavailable as non-party witnesses. Fed. R. Civ. P. 45(c)(1). But that is abstract: defendants have not identified any witness who would be unwilling to travel to New York to testify. This factor is thus neutral.

### iii.    Familiarity with governing law

The forum's familiarity with the governing law, "one of the least important factors in determining a motion to transfer," is neutral here. *ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146 (PGG), 2012 WL 3240239, at *13 (S.D.N.Y. Aug. 3, 2012). At the outset, it is not apparent which state's laws—New York's or Minnesota's—will govern Bare Body's claims. It

appears likely, given that the locus of conduct occurred in Minnesota, that its substantive law will apply. Regardless, whichever state's law is assumed to apply, this factor "is typically . . . accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 398. Bare Body has not identified any "nuanced issues of New York state law that this Court is materially more qualified to apply than a [Minnesota] court would be." *Everlast,* 928 F. Supp. 2d at 747. On the contrary, each claim is a well-recognized tort of which both New York and Minnesota courts are presumptively familiar.

iv.     Trial efficiency and interests of justice

The factor of trial efficiency and the interests of justice does not favor or disfavor transfer. Although a Minnesota forum is, on the whole, more convenient for the witnesses and in that respect promotes efficiency, this factor is neutral "in the early stages of litigation" and with "no other litigation [that] appears to be pending." *Hummingbird USA v. Tex. Guaranteed Student Loan Corp.*, No. 06 Civ. 7672 (LTS) (GWG), 2007 WL 163111, at *4 (S.D.N.Y. Jan. 22, 2007). There is no need for consolidation of cases, briefing of common issues, coordinated discovery, or other potential efficiency considerations. This factor is therefore neutral.

d.     *Weighing the factors*

Considered in combination, the § 1404(a) factors favor transfer of this case to the District of Minnesota. Four factors, most of which merit substantial weight—convenience to the witnesses, the locus of operative events, convenience to the parties, and the relative means of the parties—favor transfer. They substantially outweigh the only countervailing factor, Bare Body's choice of forum. Therefore, were the Court's § 1406(a) finding overturned, the Court would, in the alternative, grant defendants' motion to transfer venue pursuant to § 1404(a).

22

### D.    Additional Pending Motions

In light of the Court's ruling granting the transfer of venue to the District of Minnesota, this Court does not have occasion to rule on defendants' other pending motions under Rules 12(b)(6) and 12(f).  The Court denies as moot defendants' motion for dismissal for lack of personal jurisdiction under Rule 12(b)(2) and to dismiss (as opposed to transfer) under Rule 12(b)(3).  Defendants' other motions—for dismissal under Rule 12(b)(6) and to strike under Rule 12(f)—are reserved for the transferee court.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1406(a); denies as moot defendants' motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and to dismiss for improper venue under Rule 12(b)(3); and declines to rule on defendants' other motions, which are reserved for the transferee court.

The Clerk of Court is respectfully directed to transfer this case to the U.S. District Court for the District of Minnesota.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 17, 2024
       New York, New York

23