UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Bare Body Laser Spa Inc.,            File No. 24-cv-2977 (ECT/SGE)

    Plaintiff,

v.                                       **OPINION AND ORDER**

John M. Billings and Lunabit Capital LLC,

    Defendants.

---

Daniel DeSouza, DeSouza Law, P.A., Coral Springs, FL, and Darren B. Schwiebert and Scott A. Benson, Briol & Benson, PLLC, Minneapolis, MN, for Plaintiff Bare Body Laser Spa Inc.

Jon R. Steckler, Madigan, Dahl & Harlan, P.A., Minneapolis, MN, for Defendants John M. Billings and Lunabit Capital LLC.

---

In this diversity case, Plaintiff Bare Body Laser Spa asserts tort and quasi-contract claims against a physician, John M. Billings, M.D., and a Bitcoin-investing business partly owned by Dr. Billings, Lunabit Capital. Bare Body's core allegations are that Dr. Billings lied to procure and retain fifty percent of Bare Body's stock and then misdirected the proceeds of a loan Bare Body obtained to finance equipment purchases to instead invest in Bitcoin.

Dr. Billings and Lunabit seek dismissal of Bare Body's fraudulent inducement claim under Federal Rule of Civil Procedure 12(b)(6). They also move under Rule 12(f) to strike a series of assertedly immaterial and scandalous allegations from the operative First Amended Complaint. The motions will be granted. The fraudulent inducement claim is

dismissal-worthy because Bare Body does not allege facts plausibly showing that Dr. Billings had no intention of performing when the promise to return Bare Body's shares was made. If the allegations targeted by the Rule 12(f) motion hold any conceivable relevance, it is to the fraudulent inducement claim. In view of that claim's dismissal—as Bare Body acknowledged at the hearing on these motions—the better exercise of discretion is to strike the challenged allegations.

I[1]

Bare Body was formed by Claudia Theodoro. First Am. Compl. [ECF No. 34] ¶ 9. Ms. Theodoro met Dr. Billings in October 2021, and the two began a romantic relationship. *Id.* ¶¶ 10, 12. At the time, Ms. Theodoro was Bare Body's sole shareholder, *id.* ¶ 9, and Bare Body operated a single location in New York, *id.* ¶ 18.

In early 2022, Ms. Theodoro began moving in with Dr. Billings at his Minneapolis, Minnesota home. *Id.* ¶ 17. Ms. Theodoro completed her move to Minnesota in September 2022. *Id.* ¶ 33. Prompted by the move, Ms. Theodoro decided to open a second Bare Body location in Minnesota. *Id.* ¶ 18.

Bare Body needed to purchase equipment for the new Minnesota location, *id.* ¶ 19, and associating a physician with the business would reduce the cost of equipment financing significantly, *id.* ¶ 20. Bare Body alleges: "At the time, interest rates to finance the purchase of such equipment were approximately 12 – 15%. However, if [Bare Body] had a medical doctor associated with the new location, the finance rates would drop to

---

[1] In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

approximately 6 – 7%, representing a significant savings on hundreds of thousands of dollars on financed equipment." *Id.* ¶ 20.

Dr. Billings offered to assist in the financing effort. *Id.* ¶ 21. Bare Body made Dr. Billings a fifty-percent shareholder of the company. *Id.* ¶¶ 21, 22. This arrangement was based on Dr. Billings's representation that he would return the shares immediately after Bare Body secured equipment financing. *Id.* ¶ 21.

On March 1, 2022, Dr. Billings applied for a $500,000 loan with Bankers Healthcare Group, LLC, falsely representing he was Bare Body's "President." *Id.* ¶ 23. The loan was secured, and the proceeds were directed to Bare Body. *See id.* ¶¶ 28, 31.

On March 23, 2022, Dr. Billings advised Ms. Theodoro that the loan proceeds would be used, not to purchase equipment, but to invest in Bitcoin. *Id.* Dr. Billings instructed Ms. Theodoro to wire the loan proceeds to Lunabit, representing that the Bitcoin investment would "help [Ms. Theodoro] save for [her] future." *Id.* ¶ 26. Dr. Billings represented that all Bitcoin purchases would be made and held "solely" in Bare Body's name. *Id.* ¶¶ 26, 40. Ms. Theodoro followed Dr. Billings's instruction and caused Bare Body to transfer $485,000 to Lunabit. *Id.* ¶¶ 28, 31.

Bare Body procured equipment and leased space in which to operate its Minnesota location. *Id.* ¶¶ 32, 34.[2] The equipment was delivered to Dr. Billings's residence and stored in his garage. *Id.* ¶ 32. Dr. Billings kept Bare Body from removing the equipment from his garage, and this caused Bare Body to lose revenue. *Id.* ¶ 42.

---

[2] Bare Body does not allege how it financed this equipment purchase. *See generally* First Am. Compl.

3

By November 2022, Bare Body was unable to continue making payments on the loan. *Id.* ¶ 36. Ms. Theodoro asked Dr. Billings "to refinance the loan out of [Bare Body's] name." *Id.* "[Dr.] Billings refused to refinance the loan but did agree to begin making the monthly payments thereon and reimburse [Bare Body] for the loan payments already made." *Id.* Dr. Billings's refusal to return the Bare Body shares he had been given combined with the outstanding loan prevented Bare Body from obtaining equipment financing for a new Florida location. *Id.* ¶ 43.

Dr. Billings ended his relationship with Ms. Theodoro in early January 2023. *Id.* ¶ 38. Throughout their relationship, Dr. Billings used, and persuaded Ms. Theodoro to use, "schedule 1 psychedelic/hallucinogenic drugs." *Id.* ¶¶ 13–16. Ms. Theodoro also witnessed Dr. Billings administer these drugs "to dozens of persons . . . from his residence in Minneapolis." *Id.* ¶ 15. "From November 2022 through January 2023, [Dr.] Billings'[s] behavior became more and more erratic as he continued to take various illegal hallucinogens/psychedelics and administer such to a variety of persons (including [Ms.] Theodoro) at their home in Minnesota and elsewhere." *Id.* ¶ 37.

Bare Body asserts four claims, all under Minnesota common law. (1) It alleges Dr. Billings fraudulently induced Bare Body to make him a fifty-percent shareholder and to obtain the $500,000 equipment-financing loan from Bankers Healthcare Group. *Id.* ¶¶ 46–51. (2) It alleges Dr. Billings and Lunabit converted Bare Body's property, including the equipment stored at Dr. Billings's home and the loan proceeds. *Id.* ¶¶ 52–58. (3) It alleges that Dr. Billings and Lunabit were unjustly enriched through their receipt of the loan proceeds. *Id.* ¶¶ 59–62. (4) It alleges Dr. Billings breached a fiduciary duty "by purchasing

and holding hundreds of thousands of dollars in Bitcoin in his and/or Lunabit's name while refusing to account to [Bare Body] for such purchase." *Id.* ¶¶ 63–67. For relief, Bare Body seeks damages, including punitive damages, unspecified injunctive relief, pre- and post-judgment interest, costs, and "other relief as the Court deems just and proper." *Id.* at 11 (following "WHEREFORE" clause).

II

In reviewing a motion to dismiss for failure to state a claim, a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Bare Body's fraud claim implicates Rule 9(b)'s particularity-in-pleading requirement. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and

5

what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). "The claim must identify who, what, where, when, and how." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). While Rule 9(b) requires particularity in pleading, "a complaint need not be filled with precise detail." *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1110 (D. Minn. 2009). Rather, "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888. "The level of particularity required depends on the nature of a case," *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012), and to determine whether a party has satisfied Rule 9(b), courts look to "the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading," *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957).

The parties agree Minnesota law governs Bare Body's fraudulent inducement claim. *See* Mem. in Supp. [ECF No. 70] at 17–18 (citing Minnesota law); Mem. in Opp'n [ECF No. 81] at 5–8 (same). To meet the governing pleading standards, Bare Body must allege particular facts plausibly showing:

> (1) a false representation [or omission] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation

6

> caused action in reliance thereon; and (5) pecuniary damages
> as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011) (citing *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000)). A future promise is generally non-actionable in fraud. *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 368–69 (Minn. 2009). Alleged representations or omissions concerning future events cannot be fraudulent without additional allegations plausibly showing that "the party making the representation had no intention of performing when the promise was made." *Martens*, 616 N.W.2d at 747; *see Valspar*, 764 N.W.2d at 369 ("It is true that a misrepresentation of a present intention c[an] amount to fraud," but it "must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." (citation omitted)). "A subsequent intention to break [a] promise or failure to fulfill it does not constitute fraud." *Benson v. Rostad*, 384 N.W.2d 190, 195 (Minn. Ct. App. 1986) (citing *Wojtkowski v. Peterson*, 47 N.W.2d 455, 458 (Minn. 1951)) (explaining that even if the jury found that the defendant made promises to plaintiff about scheduling, "some showing he did not intend to fulfill the promise when he made it" was required). Allegations that a defendant did not fulfill a promise alone do not suffice. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, at 590–91 (8th Cir. 2018); *Stumm v. BAC Home Loans Serv., LP*, 914 F. Supp. 2d 1009, 1014 (D. Minn. 2012).

Here, the allegedly false representation underlying Bare Body's fraudulent inducement claim is Dr. Billings's statement "that, if [Bare Body] made him a 50% shareholder . . . , he would immediately forfeit/sign over the shares after the financing was

7

secured," First Am. Compl. ¶ 47,[3] but Bare Body does not plausibly allege that Dr. Billings had no intention of following through on this promise when he made it. With respect to this element, Bare Body alleges only that Dr. Billings "refus[ed] to relinquish his shares in [Bare Body]," *id.* ¶ 43, and that Dr. Billings's representation he would return the shares "[was] false when made, and [Dr.] Billings knew the representations were false when made," *id.* ¶ 49. The former allegation shows Dr. Billings did not fulfill a promise, but that alone does not suffice. *Munro*, 899 F.3d at 590–91. The latter allegation is a legal conclusion that does not comply with Rule 8(a). *See Iqbal*, 556 U.S. at 679.

At the hearing on these motions, Bare Body pressed two primary arguments in defense of its intent-directed allegations. First, Bare Body pointed out that Rule 9(b) permitted Dr. Billings's intent to be "alleged generally." Fed. R. Civ. P. 9(b). True enough. But as the Supreme Court explained in *Iqbal*, "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–687 (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1301 (3d ed. 2004)). And, the court continued, "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687; *see OmegaGenesis Corp. v. Mayo Found. for Med. Educ. and Rsch.*, 851 F.3d 800, 804 (8th Cir. 2017). Bare Body's

---

[3] Bare Body does not appear to allege that Dr. Billings's representations regarding the Bitcoin purchases form a basis for fraudulent inducement. Bare Body alleges Dr. Billings told Ms. Theodoro beforehand that the loan proceeds would be invested in Bitcoin. First Am. Compl. ¶¶ 25–26.

8

problem here arises, not from its failure to meet Rule 9(b), but from its failure to meet Rule 8(a). It has alleged no facts plausibly showing that when Dr. Billings said he would return the shares, he lacked any intention to do so. Second, Bare Body argued that the immediacy with which Dr. Billings declared he would not return the shares after the loan was approved plausibly shows he never intended to return them. If the First Amended Complaint alleged when Dr. Billings communicated his refusal to return the shares, this might be a reasonable argument. *See Cygnus Home Serv., LLC v. Legendary Baking, LLC*, No. 22-cv-687 (ECT/ECW), 2022 WL 18540493, at *2 (D. Minn. Aug. 26, 2022) (finding that "[t]he abruptness" of the alleged fraudster's communication that it could not perform, "combined with the apparent absence of any explanation why," plausibly showed the fraudster knew it did not intend to perform when it said it would). A line-by-line review of the First Amended Complaint, however, shows it does not allege when or how Dr. Billings communicated his refusal to relinquish the Bare Body shares.

III

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In considering whether to strike any such materials from a pleading, the court must accept the facts alleged in the at-issue pleading as true. *J. Swanson & Co., LLC v. Rejuvenating Nutrition Coaching, LLC*, No. 23-cv-1323 (PJS/LIB), 2023 WL 7299145, at *2 (D. Minn. Oct. 12, 2023) (citing *Mille Lacs Band of Chippewa Indians v. Minnesota*, 952 F. Supp. 1362, 1395 (D. Minn. 1997), *aff'd*, 124 F.3d 904 (8th Cir. 1997), *aff'd sub nom. Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999)). "Because the rule is stated

9

in the permissive . . . it has always been understood that the district court enjoys liberal discretion thereunder." *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation omitted).

The First Amended Complaint's allegations regarding Dr. Billings's use and dispensing of controlled hallucinogenic drugs are neither essential nor helpful in pleading the essential elements of any of Bare Body's claims. It is difficult to understand how these allegations are relevant to any claim. Regardless, Bare Body explained at the hearing that, in its view, these allegations are relevant only to the fraudulent inducement claim. And Bare Body conceded that if its fraudulent inducement claim were dismissed, the allegations Dr. Billings targets with his Rule 12(f) motion could properly be stricken. For this reason, the motion to strike will be granted.

IV

A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, No. 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *see Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). On the other hand, when claims "might conceivably be repleaded with success," dismissal without prejudice is ordinarily justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Clearly, Bare Body's

10

pleading failure here falls in the latter category, meaning the fraudulent inducement claim will be dismissed without prejudice.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Partial Motion to Dismiss and Strike Pleadings [ECF No. 66] is **GRANTED**.

2. Count I of the Plaintiff's First Amended Complaint [ECF No. 34] is **DISMISSED WITHOUT PREJUDICE**.

3. Paragraphs 13, 14, 15, 16, and 37 of the First Amended Complaint are **STRICKEN**. Except for the allegation that Dr. Billings terminated the romantic relationship with Ms. Theodoro, Paragraph 38 of the First Amended Complaint, is **STRICKEN**.

Dated: December 27, 2024                s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court